IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 20-cr-00068-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMUEL TERRAYE WINDOM,

    Defendant.

**ORDER DENYING MOTION TO SUPPRESS**

This matter is before the Court on Defendant Samuel Terraye Windom's Motion to Suppress. (Doc. # 24). For the following reasons, Mr. Windom's Motion is denied.

### I.    BACKGROUND

On November 22, 2019, Denver police applied for a warrant to search the residence at 2924 S. Federal Blvd. Apartment #301 in Denver. The warrant application was based on an affidavit ("the Affidavit") submitted by Denver Police Department Detective Joshua Vance ("the Affiant"). (Doc. # 29-1). The Affidavit stated that a Confidential Informant ("CI") had observed Defendant selling drugs from the apartment in the past six months, and that law enforcement officials had executed a controlled buy of methamphetamine from Defendant days before the warrant application. (Doc. # 29-1, pp. 3–4). Based on this information, a Denver County Court Judge issued a warrant ("the Warrant") to search Defendant's apartment.

1

On December 2, 2019, law enforcement executed the Warrant at the apartment, where they found methamphetamine and two firearms. (Doc. # 29 at 2). Defendant was later indicted and charged with: Count I, felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count II, possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); and Count III, possession and carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. # 1).

Defendant now moves to suppress the evidence obtained during the search of the apartment. He argues that the search was unlawful because the Warrant was not based on probable cause. Specifically, Defendant contends that: (1) the information in the Affidavit was stale; (2) there was not an adequate nexus between the sale of drugs and the apartment to be searched; and (3) the Affidavit was so lacking in indicia of probable cause that the officers who executed the Warrant could not reasonably rely on it in good faith. The Court addresses and rejects each argument.

## II.      STANDARD OF REVIEW

The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Police officers who wish to obtain a search warrant must request one from a judge, who will issue the warrant only if there is probable cause to justify the search. *See also Dalia v. United States*, 441 U.S. 238, 255 (1979). Probable cause exists when "there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

"A magistrate's determination of probable cause should be paid great deference."[1] *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted). "The task of the issuing magistrate is simply to make a practical, common sense decision . . . And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) (quoting *Gates*, 462 U.S. at 238–39). Therefore, this Court will not overturn the issuing judge's probable-cause determination unless such determination lacked a substantial basis. *See Gates*, 462 U.S. at 238–39.

### III.  DISCUSSION

**A.  EVIDENTIARY HEARING**

Although Defendant requests an evidentiary hearing, the Court finds that a hearing is unnecessary. The choice to hold an evidentiary hearing on a motion to suppress is within the discretion of the Court. *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995). A hearing is required only when the motion to suppress raises "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the

---

[1] Case law often uses the term "magistrate" to refer to a judicial officer who issues warrants. However, this standard applies equally to warrants issued by judicial officers other than magistrates. *See, e.g. United States v. Birch*, 2009 WL 10690759 (D. Colo., Oct. 15, 2009) (applying *Gates* standard to review of a warrant issued by a Denver county court judge). In this case, a Denver county court judge issued the Warrant.

validity of the search are in issue." *Id.* A district court may deny a request for an evidentiary hearing if the motion to suppress only argues about the legal effect of information, rather than disputes the underlying facts at issue. *See United States v. Mathews*, 928 F.3d 968, 978 (10th Cir)., *cert. denied*, 140 S. Ct. 460, 205 L. Ed. 2d 285 (2019). In this case, Defendant raises only legal issues about the sufficiency of the Warrant (staleness, nexus, and the good-faith exception) and does not challenge the factual allegations themselves. (Doc. # 24). Therefore, the Court declines to hold an evidentiary hearing.

**B.     STALE INFORMATION**

Defendant argues that the Warrant was deficient because it was based on stale information. Specifically, Defendant argues that the information provided by the CI was up to six months old – too old, in Defendant's view, to support a finding of probable cause. (Doc. # 24, p. 3). The Court disagrees.

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206–07 (10th Cir. 2004) (quoting *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990)). To determine whether information is "stale," courts evaluate a number of factors, including "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 1207. Though the age of the information is relevant to the staleness analysis, continuous and ongoing drug activity makes the passage of time less critical, undermining a staleness claim. *Id.* When drug activity is ongoing, a multi-month gap between the receipt of information and

the issuance of a search warrant does not render that information stale. *See United States v. Villanueva*, 821 F.3d 1226, 1237 (10th Cir. 2016) (three-month-old information not stale); *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (five-month-old information not stale). Further, if the property sought is likely to be kept in one place for a considerable time – like drugs or firearms stored in a residence – "probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986).

The Court finds that the information supporting the Warrant was not stale because the CI's statements suggested that Defendant's criminal activity was ongoing. In September 2019, the CI told police that a person named Trey – later identified as Defendant – was selling methamphetamine from his apartment. (Doc. # 29-1, p. 3). The CI also directed police to the 2924 S. Federal Blvd. apartment, which he identified as Defendant's apartment. (Doc. # 29-1, p. 3). The CI said that he or she had purchased methamphetamine from Defendant in that apartment in the past, and that he or she had observed Defendant in possession of methamphetamine and firearms while inside the apartment in the past six months. (Doc. # 29-1, p. 3). All of this information suggested that Defendant was engaged in ongoing criminal activity in the apartment, undermining his staleness claim.

Further, the controlled buy, which took place just days before the Warrant issued, corroborated the CI's information that Defendant was selling methamphetamine on an ongoing basis. *See United States v. Traxler*, 477 F.3d 1243, 1247 (10th Cir. 2007) ("A

confidential informant's tip can factor into the totality of the circumstances supporting probable cause when the tip is corroborated by officers' investigations.").Thus, the totality of the circumstances shows that police had probable cause to search Defendant's apartment, and the information supporting the probable-cause determination was not stale.

Defendant argues, however, that the delay in the execution of the Warrant (issued on November 22 and executed on December 2) was impermissibly long. (Doc. # 24, p. 4). The Court disagrees. The Tenth Circuit has held that similar delays between warrant issuance and warrant execution are not impermissibly long. For example, in another case involving methamphetamine, *United States v. Garcia*, 707 F.3d 1190, 1195 (10th Cir. 2013), the Tenth Circuit found that a nine-day delay between issuance and execution was permissible because "there was probable cause to believe drugs and items related to drug distribution would continue to be found in [defendant's] home." Similarly, in the instant case, the CI's allegations of ongoing criminal activity, combined with the recent controlled buy, provided probable cause to believe drugs would continue to be found in Defendant's home says or even weeks after the Warrant issued. Therefore, the Court finds that the information relied upon to issue the Warrant was not stale.

**C.   NEXUS**

Defendant next argues that the Warrant failed to establish probable cause because there was not a sufficient nexus between the alleged drug activity and the apartment to be searched. Specifically, Defendant contends that the evidence linking

6

drug activity to the apartment is lacking because the controlled buy took place away from the apartment and the CI's statements are too old to establish an adequate nexus. (Doc. # 24, pp. 6–7).

Probable cause "requires a nexus between suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). Such nexus exists "once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) (internal quotation marks omitted). The issuing judge may draw reasonable inferences based on practical considerations as to the likelihood that evidence will be found in a particular place. *Id.* at 1280. The affidavit "need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).

The Court finds that there was an adequate nexus linking the alleged criminal activity to Defendant's apartment. First, there was substantial evidence linking Defendant, a suspected drug dealer, to the apartment. According to the Affidavit, Defendant listed the 2924 S. Federal Blvd. apartment as his address on multiple official records. Denver police also tracked cars registered to Defendant to the apartment building. Indeed, Defendant concedes that "there was evidence that Windom lived at the apartment." (Doc. # 24, p. 7).  The Tenth Circuit has recognized that "people who use or sell drugs generally keep a ready stash in their house, in addition to other types of evidence that cannot be easily disposed of, and these items were likely to be found in

the house." *Garcia*, 707 F.3d at 1195; see also *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) (it is "merely common sense that a drug supplier will keep evidence of his crimes at his home"; "courts have not required particular facts to support the inference that a drug trafficker keeps his supply at his residence."). Thus, the fact that Defendant was suspected of drug trafficking, combined with the evidence that he lived at the apartment, supported a search of that apartment.

Further, the CI's statements established a direct link between the Defendant's drug dealing and the apartment: the CI directly observed Defendant selling drugs in the apartment. (Doc. # 29-1, p. 3). The controlled buy corroborated this information and also provided independent evidence that Defendant was engaged in drug activity. (Doc. # 29-1, p. 4). Therefore, this Court finds that the Affidavit established an adequate nexus between drug activity and the apartment.

Defendant argues, however, that other courts have reached the opposite conclusion based on similar fact patterns. He cites *United States v. Bautista-Meza*, No. 14-10016-01-EFM, 2014 WL 2158408, (D. Kan. May 23, 2014) and *United States v. Rowland*, 145 F.3d 1194 (10th Cir. 1998) to support this argument. Both cases are distinguishable.

*Bautista-Meza*, like this case, involved a search of a defendant's residence following a controlled buy of methamphetamine. 2014 WL 2158408, at *1. However, the officers in *Bautista-Meza* waited until six months after the controlled buy to request a search warrant. *Id*. at *2. When they finally executed the warrant, officers found drugs

8

and drug paraphernalia in the defendant's apartment. *Id*. The *Bautista-Meza* court held that search was invalid. *Id*. at 3.

Specifically, the *Bautista-Meza* court held that the warrant was based on stale information: the controlled buy six months earlier. 2014 WL 2158408, at *4. The court concluded that the staleness undermined the nexus between the suspected criminal activity and the defendant's apartment: "the only connection between [the sale of methamphetamine] and the residence is the information obtained from [the CI] at some point *prior* to the controlled buy in April 2013 . . . the affidavit does not mention *any* actual sale of illegal narcotics by Defendant after the controlled buy in April." *Id*. at 5. In this case, by contrast, the controlled buy took place just days before the search warrant was issued. Thus, the information in the Affidavit was not stale, and it established a clear nexus between the Defendant's drug activity and is residence.[2]

*Rowland*, too, is factually distinguishable. *Rowland* involved a child-pornography sting. 145 F.3d 1194, 1199. After the defendant ordered videotapes depicting child sexual abuse, government agents installed a tracking device in the tapes and delivered them to the defendant's private post-office box. *Id*. The defendant retrieved the tapes and took them to his office, where they remained until the tracking device stopped

---

[2] Further, even if *Bautista-Meza* were factually identical to this case, this Court would nevertheless not be bound to follow it. *Bautista-Meza* was decided by a judge in the District of Kansas. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation omitted). This Court follows Tenth Circuit precedent, which holds that it is reasonable to infer that people who sell drugs often keep drugs and related items at their residence. *See Garcia*, 707 F.3d at 1195.

working. *Id*. Federal agents then obtained a warrant to search the defendant's residence, where they found child pornography. *Id*.

The *Rowland* court held that the search lacked sufficient nexus to the defendant's crime because there was no evidence that the defendant had taken the illicit material to his house. *Id*. at 1205. Although the probable-cause affidavit alleged that it was *possible* that the defendant took the tapes to his house, the "affidavit provided no basis to either limit the possible sites or suggest that [defendant]'s home was more likely than the otherwise endless possibilities" to contain contraband. *Id*.

The instant case, by contrast, involves drugs. It is well known that "people who use or sell drugs generally keep a ready stash in their house." *Garcia*, 707 F.3d at 1195. Additionally, the Affidavit clearly establishes that Defendant's apartment was more likely than "otherwise endless possibilities" to contain illegal drugs: the CI stated that he or she witnessed Defendant with drugs and firearms inside the apartment and bought drugs from Defendant inside the apartment. (Doc. # 29-1, p. 3). Thus, Defendant's apartment was, at the very least, a likely hiding place for guns and drugs. "The magistrate was not required to rule out every other possible alternative." *Shomo*, 786 F.2d at 984. Because the information in the Affidavit set forth a "substantial basis" linking the apartment to the sale of drugs, this Court finds that the Affidavit satisfied the nexus requirement. *Id.*

### D. GOOD-FAITH EXCEPTION

Finally, Defendant argues that, if the Court invalidates the Warrant, it should also find that the "good-faith exception" does not apply. The Court need not address this argument.

The good-faith exception provides that a court should not suppress evidence obtained as a result of an officer's good-faith reliance upon a later-invalidated warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). In this case, however, the Warrant was valid. Therefore, the good-faith exception has no bearing on this case, and the Court need not address Defendant's argument.

### IV. CONCLUSION

For the forgoing reasons, Defendant Samuel Terraye Windom's Motion to Suppress (Doc. # 24) is DENIED.

DATED: March 9, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge